[Crim. No. 662.   Fourth Dist.   Dec. 13, 1948.]

THE PEOPLE, Respondent, v. MURIEL W. TALLENT, Appellant.

Raymond E. Hodge for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The appellant and one Dover were jointly charged with the crime of robbery in that on February 29, 1948, they held up a cocktail lounge in San Bernardino, taking about $300 from the bartender. It was further charged that at the time of the commission of the offense they were armed with a deadly weapon. Dover pleaded guilty and the appellant pleaded not guilty. The appellant was ably represented by counsel at the trial. A jury found him guilty and also found that he was armed with a deadly weapon at the time of the robbery. He was sentenced to imprisonment, and he appeals from an order denying a new trial and from the judgment.

With one exception, there is little or no dispute as to the main facts surrounding the commission of this robbery and the events of the next few days. Briefly stated, it appears that the appellant and Dover first met on February 27 at "Knobby's Café" in Ontario; that they again met at the same place on February 29; that they then proceeded in appellant's automobile to another café near Ontario; that Dover there told the appellant how he had robbed slot machines and showed him a loaded gun he was carrying; that while returning to Ontario Dover told the appellant he was going to pull two jobs that night; and that they returned to Knobby's Café where they had several "beers." Later that night they drove in appellant's car to San Bernardino, first stopping at the cocktail lounge in question. They then went to another café and later returned to the cocktail lounge, after agreeing to hold it up. After drinking two or three beers Dover sent the appellant outside to get the car ready. When he returned, in five or ten minutes, he locked the door of the café and stood guard there while Dover pulled out his gun and removed the money from the cash register while holding everyone at gun point. They then drove rapidly away, returning to Ontario.

They were together most of the time for the next four days at Dover's residence and at Knobby's Café. They divided the proceeds of the robbery although the appellant contends he received only $50, and that this was later taken from him. Two or three nights later they returned to San Bernardino where they were stopped for driving the car in a weaving fashion. The officer admonished them and directed them to go home, which they did. About that time the appellant heard Dover and his wife planning to leave because the police were after them. On March 4, the appellant spent most of the day

in Knobby's Café, Dover and his wife not being present. In the evening Dover came in, and the appellant had someone at the café call the police, who came and took Dover away. A little later they returned and picked up the appellant. He gave the police no information that night and on March 8 he told two of the sheriff's deputies that he did not want to talk to them. On March 10, he made a complete statement to these deputies and later that day repeated it for the purpose of having it taken down in shorthand. This statement, which was received in evidence, told the details of how the robbery was committed and is essentially the same as the facts testified to by Dover and as confirmed, in part, by the testimony of other witnesses. However, this statement contained other facts which are relied on by the appellant as showing that he unwillingly assisted Dover in this robbery.

■ Appellant's main contention is that the evidence is insufficient to sustain the judgment because it shows that he was forced through great fear of his life to assist Dover in the commission of this crime, and that through his cooperation with the police Dover was caught and convicted. The appellant relies on his own testimony that while they were returning to Ontario and before they first went to San Bernardino Dover laid his gun across his lap pointing toward the appellant; that Dover said "I won't hurt you. I can get along with anybody as long as they treat me right"; that Dover also threatened him when they entered the cocktail lounge for the purpose of robbing it; and that Dover "didn't come out and say it" but that he waved the gun at him and told him he would not hurt him "as long as I do what he wanted me to do." Dover denied having made any such threats and testified that the appellant suggested robbing this place. It further appears that earlier on that day the appellant became aware that Dover was armed and intended to commit a robbery that night. By his own testimony the appellant had ample opportunity to leave Dover before he took him to San Bernardino. He had another perfect opportunity just before the robbery, when he left the cocktail lounge for some ten minutes, during which he moved his car and got it ready for a quick departure. He made no objection when he was given part of the money. He remained with Dover some four days during which he had numerous and ample opportunities not only to get away from Dover but to report to the police. He decided to report to the police only after hearing Dover and his wife discuss the fact that "the law was after them." When

he himself was taken into custody on March 4, he said nothing to the officers and refused to talk to other officers on March 8. He first told what he knew and claimed to have acted through threats and fear on March 10, when he learned that Dover had confessed.

The question of whether the appellant was forced into his admitted acts through his fear of Dover and because of threats made by him, or whether he voluntarily participated in the commission of the crime was purely one of fact for the jury, and the evidence amply sustains the verdict and the judgment. The appellant's actions after he learned that Dover intended to rob some place that night, and his belated reporting of Dover to the police, followed by his refusal for many days to tell what he knew, are hardly consistent with his eventual claim of innocence and of full and praiseworthy cooperation in aiding the cause of justice.

The appellant further contends that he was convicted solely on the testimony of Dover, an accomplice, and that there was no corroboration as required by section 1111 of the Penal Code. This contention is without merit. The accomplice was thoroughly corroborated by appellant's own admissions, which went much farther than merely connecting him with the commission of the offense. His contention that his admitted acts were not voluntarily done presents another question, which has already been considered, but does not destroy the effect of this corroboration. Moreover, there was ample corroboration in the testimony of several other witnesses which directly connected him with the commission of the offense.

In a closing brief it is contended that while it clearly appears that Dover was armed at the time in question the evidence is insufficient to sustain a finding of armed robbery with respect to the appellant, and that the judgment should be modified by reducing it to one for robbery in the second degree.

The appellant and Dover acted jointly in committing this robbery. Dover held and used the gun in order to accomplish their purpose while the appellant assisted in other ways. Each was a principal in this act of armed robbery and the fact that the appellant was not the one who actually held the gun is immaterial. (Pen. Code, §§ 31 and 971; *People* v. *Kiser*, 22 Cal.App.2d 435 [71 P.2d 98].)

The order and judgment are affirmed.

Griffin, J., concurred.