[Crim. No. 1691. Fourth Dist. Sept. 29, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. CLINTON LEE COLLIER et al., Defendants and Appellants.

Wesley H. Mathews and E. Werden Conway, under appointment by the District Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David S. Sperber, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.- Defendants were found guilty by a jury in count one of violation of Penal Code, section 211 (robbery), and in count two of violation of Penal Code, section 182 (criminal conspiracy). Each was also charged with and admitted a prior conviction of a felony. Probation was denied and defendants were sentenced on each count to consecutive terms of imprisonment for the terms prescribed by law.

A robbery was committed at a liquor store in National City during the daylight hours of February 14, 1964. One of the robbers, who wore a hat and carried a sawed-off shotgun, was identified positively as Collier. The other robber was masked with a silk stocking and was not identified; he wore a fairly long coat and a hat, and he was about the size of Bentley. Both entered through the front door and left by a side door opening from a rear room onto a parking area. Collier and Bentley were seen together some hours later leaving a house on Highland Avenue occupied by one Billy Joe Alstadt, with whom Collier had been in the liquor store on February 13. Alstadt also had been the owner of another house to which he did not have access after March 20, when it was purchased by a new owner who found underneath it on April 1 a sawed-off shotgun similar to that used in the robbery. Shortly prior to the robbery a car passed the liquor store six times or more at intervals of 15 to 30 minutes, in which were two men and the driver, who may have been either a man or a woman, wearing a black wig.

On February 27, in the house on Highland Avenue occupied by Alstadt, there were found two hats, each similar to one of those worn by one of the two robbers, a coat similar to that worn by the unidentified robber, a wig and a knotted silk stocking.

 On February 20, there were found in an apartment occupied by Collier at the time of his arrest two handwritten postcards and other papers, including two diagrams. The hand-printed and handwritten parts of the diagrams were identified as being in the same handwriting or printing as that of Bentley by comparison with certain exemplars obtained by the police. A comparison of one of the diagrams (People's Exhibit 13) with an identified drawing of the floor plan and fixtures of the liquor store (People's Exhibit 7) would lead reasonably to an inference that the diagram (People's Exhibit 13) showed by printed words the locations in the liquor store of the cash register, a beer box, the door into the rear room, the side door to the parking area, and, there, a position identified by the printed word ''car.''

The other chart found in the apartment was identified by the owner of a cleaning plant as the plan of his establishment and surrounding area. The witness testified that he had been accustomed to keep a large sum of money there on certain days of the month. ▮▮▮ Quite unnecessarily, he stated that he ceased doing so when he heard that his place was to be robbed. (At that point, both defendants moved for a mistrial, which was denied. The court admonished the jury to disregard the remark of the witness.)

The apartment house in which Collier was arrested was one visited frequently by Bentley.

Three exemplars of Bentley's handwriting and hand-printing (People's Exhibits 1, 15 and 16) were used by an expert, who testified they were in the writing and printing of the same person as the writer and printer of the other papers referred to. People's Exhibit 1 was obtained from Bentley at the city jail on an unspecified date, presumably November 4, 1963, the date it bears; People's Exhibits 15 and 16, on February 24, 1964, by the National City police while Bentley was in custody under suspicion in connection with the present charges.

There was testimony of two witnesses that Bentley was in San Diego at the time of the robbery in National City.

Neither defendant testified.

Defendants jointly urge on appeal that the court committed reversible error in instructing the jury as to the failure of defendants to testify when viewed in the after-light of *Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106], and *People* v. *Bostick,* 62 Cal.2d 820 [44 Cal.Rptr. 649, 402 P.2d 529].

▮▮▮ Defendants also urge that the trial court erred in admitting the plant owner's testimony; that it was immaterial and irrelevant to the charge, because no robbery of the plant was shown to have occurred; that the motions for mistrial should have been granted, for the reason that the plant owner's statement that he was told his plant was about to be robbed was clearly prejudicial; that the prejudice was not cured by the court's admonition; that Penal Code, section 654, prohibits the consecutive sentences in this case. (The Attorney General concedes that the consecutive sentences were improper.)

In addition, Bentley argues he was not informed of his rights to counsel and to remain silent before he gave the handwriting samples. He urges the handwriting samples are as much an admission as are verbal statements and their ad-

mission into evidence was reversible error under *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

 Defendant Collier makes the claim that the sawed-off shotgun received in evidence should not have been admitted.

The shotgun was found under a house owned by Alstadt at the relevant period, the address of which was written on a paper (People's Exhibit 18) found in the apartment where Collier was arrested. All of this was relevant evidence which, together with the weapon, was properly received.

 The testimony of the plant owner was admissible. It permitted the inference of a possible uniform plan of operation on the part of one or both defendants.

 The district attorney disavowed any intention to elicit the statement that the jury was admonished to disregard, and any knowledge that such a statement would be made. Since the witness did not identify anyone as the possible robber or the source of his information, and the court admonished the jury to disregard the remark, the denial of the motions for mistrial was not improper.

 The consecutive sentences should not have been imposed and the defendants should have been sentenced on only one of the two convictions. (*People* v. *Keller,* 212 Cal.App.2d 210 [27 Cal.Rptr. 805].)

 The jury was instructed in part as follows: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or, if, though he does testify he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that, among the inferences that may be reasonably drawn therefrom, those unfavorable to the defendant are the more probable."

The district attorney, in argument to the jury, referred once generally to the law on which the court would, as it did, instruct the jury concerning inferences that might be drawn from the evidence as the result of failure of a defendant to testify; he then related such anticipated instruction to the absence of any evidence to controvert the testimony as to Collier's participation in the robbery; thereafter in no less than nine different passages he emphasized the effect of Bentley's failure to testify upon the inferences that might be

drawn from the evidence possibly relating him to the crimes.

The evidence of Collier's guilt is direct, clear and convincing. Not only is it not reasonably probable that a result more favorable to Collier would have been reached in the absence of the error, but the proofs of guilt are so clear and conclusive that the court can say affirmatively that Collier cannot have been harmed by the instruction given or the prosecutor's references thereto.

Reversal as to Collier, therefore, is not required. (*People* v. *Bostick, supra,* 62 Cal.2d 820.)

The situation is different with regard to Bentley. The evidence, in the absence of error, is sufficient to sustain a conviction; however, the sufficient evidence is almost wholly circumstantial and depends upon the drawing of certain inferences. One would be the inference that the sketch of the floor plan of the liquor store was made before the robbery; another that the sketch was executed as a part of a scheme to commit the robbery.

For that reason the error in giving the instruction, which afforded the opportunity for the district attorney's comments, requires reversal as to Bentley only.

It becomes unnecessary, therefore, to pass upon Bentley's contention that the receipt into evidence of the uncoerced handwriting exemplars is reversible error. That question may be answered by the Supreme Court in an appropriate case.[1]

As to defendant Collier, the convictions are affirmed as to both counts; the judgment on count two is reversed only as to the sentence imposed.

As to defendant Bentley, the judgments are reversed solely because of the giving of the erroneous instruction.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 24, 1965.

---

[1]*People* v. *Graves,* (Cal.App.) 45 Cal.Rptr. 118, in which a hearing has been granted by the Supreme Court.