[Crim. No. 13165.   Second Dist., Div. One.   Aug. 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM V. PARKER et al., Defendants and Appellants.

Harvey H. Yoder, Jr., in pro. per., and Byron Y. Appleton, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal by each of the appellants from a judgment of conviction of first degree robbery, attempted robbery and of assault with a deadly weapon.

In an information filed in Los Angeles County on May 2, 1966, defendants were jointly charged in counts I and II with robbery, in count III with attempted robbery and in count IV with assault with a deadly weapon with intent to commit murder. In counts I, II and III it was also alleged that defendants were armed with a deadly weapon at the time of the commission of the offenses. In all four counts it was alleged, too, that Yoder was armed with a deadly weapon at the time of the arrest. One prior conviction of a felony was alleged against Parker and three prior felony convictions were alleged against Yoder.

Defendants pleaded not guilty and denied the alleged prior convictions. Later in the case the one prior charged against Parker (an Indiana conviction) and the first and second priors charged against Yoder (Nebraska for auto stealing and Nevada for burglary) were stricken. Yoder admitted the third charged prior conviction of robbery in California on September 6, 1961, and that he had served a term therefor in the state prison.

In a jury trial each defendant was found guilty of first degree robbery as charged in counts I and II, and of attempted robbery in the first degree as charged in count III. Parker was found to have been armed at the time of the commission of the offenses in counts I, II and III. Yoder was found not to have been armed at the time of the commission of these offenses. Each defendant was found guilty of assault with a deadly weapon in violation of section 245, Penal Code, a lesser and necessarily included offense within that charged in count IV. Yoder was sentenced to the state prison for the term prescribed by law on each count. Sentence on count II was ordered to run consecutively to count I, count III to run consecutively to count II and the sentence as to count IV to run concurrently with count III.

Parker was sentenced to the state prison for the term prescribed by law on each count. Sentences as to counts II, III and IV were ordered to run concurrently with count I; counts I, II, III and IV were ordered to run consecutively to a sentence imposed in case No. 321-638.

A résumé of some of the facts is as follows:

Count I: On February 16, 1966, about 9 p.m. defendants entered a liquor store at 2424 Fletcher Drive where Andrew

Cleeland was employed and working as a clerk. The defendants entered the store, Parker took out a revolver, Yoder pushed Cleeland toward the cash register and told him to "Open it." Cleeland complied and then was told by Yoder to lie down on his stomach. Cleeland heard the sounds of the cash register as it was being rifled. Yoder then stated to Cleeland, in effect, that there must be some more money and Yoder removed $13 and a wallet from Cleeland's pockets. Defendants left the place and Cleeland called the police. About $71 was missing from the cash register. Cleeland described defendants to the police and later saw pictures of them at a police station and saw Parker in a police lineup.

Count II: Frank Mazza was working as a clerk in the Glen-Row Liquor Store on Fletcher Drive about 9:50 p.m. on February 16, 1966. Mazzo saw Parker in the store with a revolver in his hand saying, "This is a hold-up." Yoder was with Parker and told Mazzo to open the cash register. After Mazzo complied with the command, Parker directed Mazzo to a back room where Parker commanded Mazzo to lie face down on the floor. Mazzo heard Yoder taking the money from the cash register. After defendants left, Mazzo determined that about $200 was missing from the register. Mazzo, at the police station, saw a picture of Yoder and saw Parker in a lineup.

Counts III and IV: Harry Finkelstein was employed and engaged as a clerk at the M & W Liquor Store, 2801 Fletcher Drive, Los Angeles, at about 8 p.m. on February 21, 1966. Finkelstein looked up and saw Parker with a revolver pointed at him. Parker directed Finkelstein into a back room where Finkelstein was directed to lie down. Some customers entered the store and Parker "motioned with the gun" for Finkelstein to get up and wait on them. Parker stayed behind a wine shelf. Finkelstein saw Yoder "standing . . . behind the counter." Finkelstein twice asked Yoder to move to the front of the counter but Yoder shook his head.

Finkelstein waited on a customer and then grabbed a .45 caliber revolver which was kept close by the cash register, went out the front door, pausing momentarily at the entrance to fire a shot towards Parker behind the wine shelf. Finkelstein positioned hmself behind a parked car in front of the store. He saw Parker go behind a display in the store and Finkelstein told Parker he would shoot him if he came out the front door, the store's only doorway. Parker ran towards the door and Finkelstein shot at Parker. Parker stopped at a display, pointed his gun at Finkelstein and apparently then

fired his revolver. In seconds Finkelstein heard a plate glass window in the store being "smashed out." Finkelstein looked and saw the men running; he ran after them shouting for the men to stop. The men did not stop and Finkelstein fired shots at them. No money was taken from the cash register. Finkelstein saw a picture of Yoder at the police station and saw Parker at the jail.

Jerry Moore drove up to the M & W Liquor Store about 8 p.m. on February 21, 1966, and saw Yoder outside the store, leaning against the building. Moore parked in front of the store and entered. Later he saw Yoder standing behind the counter in the store. Moore heard someone scream "Hold up" and then someone "let go with a .45." Moore hid behind a counter and saw Parker with a gun. Moore heard three or four more shots from the .45 and "what sounded like a .38 or a .32 go off." Moore saw someone who appeared to be Parker pushng Yoder through the plate glass window. Moore recognized a picture of Yoder at the police station.

Mrs. Moore stayed in the parked car when her husband entered the store. She saw Yoder standing behind the counter with Finkelstein. After Finkelstein exited from the store he stood behind her car and called for help. She heard shots and saw two people "come through the window" and Finkelstein chasing them.

Officer Leone testified that on February 21, 1966, he found some .45 steel jacket slugs in the store and also a .38 caliber slug on the floor of the store.

Yoder testified that he did not rob Cleeland or Mazzo on February 16, 1966, that he was not with Parker on that date but he could not remember where he was. He stated that he was not with Parker on February 21, 1966, and did not rob Finkelstein. On cross-examination he admitted his previous conviction for armed robbery.

Parker did not testify in his own behalf and produced no evidence.

During the opening argument of the prosecutor, he stated: "Now, when you consider whether Mr. Yoder is telling the truth or not, you can bear in mind and take into consideration the fact that he was convicted of a felony. That goes to the credibility of that particular witness.

"Now Mr. Parker, where is his evidence? He produced no evidence here at all that I can see."

A motion for a mistrial was made by each counsel for each defendant. The motion, after argument out of the hearing of

the jury, was denied. Parker's counsel asked that the jury be admonished to disregard the statements of the prosecutor and agreed that the admonition "should be along the lines of the instruction" to the effect that a defendant has a constitutional right not to testify in a criminal case. Thereafter the judge stated to the jury:

"Ladies and gentlemen, during the People's opening argument, Mr. Madden, Deputy District Attorney, stated to you in substance:

" 'Now, Mr. Parker, where is his evidence? He produced no evidence here at all that I can see.'

"Ladies and gentlemen, included among the instructions on the law which the Court will later give you, which I will later give you more fully, is the proposition that it is a constitutional right of a defendant not to be compelled to testify, and you will recall that Mr. Parker failed to testify.

"From the fact that Mr. Parker failed to testify, you must not draw any inference of guilt nor should Mr. Parker's failure to testify be discussed by you nor shall it enter into your deliberations in any way.

"Mr. Madden, you may resume."

■■ Appellants now assert that the judge erred in denying the motions for a mistrial and a new trial in the light of the comments made by the prosecutor and the judge.

Each appellant relies heavily upon *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].

Considering Yoder first, the comment by the deputy district attorney was, in effect, that Yoder was an ex-convict and his credibility as a witness should be sharply discounted. Yoder was an admitted convicted armed robber. Code of Civil Procedure, section 2065, provides that one who has been convicted of a felony is subject to impeachment by a showing of such conviction. Yoder testified to the exact contrary of Cleeland, Mazzo, Finkelstein, Moore and Mrs. Moore, all eyewitnesses to his activities. It is little wonder that the jury disbelieved him.

As to Parker, he decided not to testify himself, nor to produce any evidence in his own behalf. A careful reading of the statement of the prosecutor indicates that it cannot in fairness be held to be a comment upon the failure of Parker to testify —the reference was to the evidence as a whole — in other words, here is the evidence of the prosecution, where is the evidence of defendant Parker? There was neither allusion to nor innuendo based upon Parker's decision not to take the

witness stand and to testify. The prosecutor did not ask the jury to draw an inference of guilt from Parker's failure to testify. To say ". . . Parker . . . produced no evidence . . . at all" is not a comment on his failure to testify. The prosecutor did no more than argue that inasmuch as the People's case was sufficient to sustain a conviction and was unchallenged and no defense had been presented, a conviction should be forthcoming. The judge admonished the jury that it was a constitutional right of Parker not to testify and that the jury was not to draw any inference of guilt from his failure to testify and the failure should not be discussed by the jury or enter into its deliberations.

*Griffin, supra,* had to do with the California practice of permitting the prosecution to comment upon, and the court's instructing a jury as to the inferences to be drawn from, a defendant's exercise of the privilege guaranteed him by the Fifth Amendment to the United States Constitution, and not with the facts here present.

In any event, even were we to assume that it was error to make the comment, it cannot be said that the error resulted in a miscarriage of justice which would require a reversal of the judgment. The conduct here is not of the variety dealt with in *Griffin, supra.* The evidence stood unchallenged and the comment added nothing to the stature of the evidence. The evidence of guilt is clear, direct and convincing. It is not at all probable that a result more favorable to either defendant would have been reached in the absence of the alleged error. The proof of guilt is so conclusive that this court can say affirmatively that neither defendant can have been harmed by the comment. (See *People* v. *Collier,* 237 Cal.App.2d 259 [46 Cal.Rptr. 887]; *People* v. *Beghtel,* 239 Cal.App.2d 692 [49 Cal.Rptr. 235].)

Appellants also assert that there were some discrepancies in the testimony of the various witnesses and therefore the evidence does not sustain the judgment. The trial judge and jury assessed the credibility of the witnesses and apparently found the prosecution witnesses to be truthful. It is not for this court to attempt to reweigh the evidence. (See *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Moten,* 27 Cal.App.2d 692 [24 Cal.Rptr. 716]; *People* v. *Jackson,* 63 Cal.App.2d 586 [147 P.2d 94]; *People* v. *Cass,* 178 Cal.App.2d 305 [3 Cal.Rptr. 68].)

Yoder, in addition to other claims, asserts that he should not have been convicted of first degree robbery because

he personally was not armed. Parker possessed and used a gun in the offenses. All concerned, under the circumstances, are guilty of robbery in the first degree. (See *People* v. *Silva*, 143 Cal.App.2d 162 [300 P.2d 25]; *People* v. *Tallent*, 89 Cal.App. 2d 158 [200 P.2d 214].)

Each of the appellants was fairly and properly convicted of the offenses of which each was found guilty.

The judgment as to Parker is affirmed.

The judgment as to Yoder is affirmed.

The purported appeals from the orders denying motions for new trial are, and each is, dismissed.

Wood, P. J., and Lillie, J., concurred.

The petition of appellant Yoder for a hearing by the Supreme Court was denied November 1, 1967.