[Crim. No. 11624.   Second Dist., Div. One.   Aug. 26, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES YOUNG LEE, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Jimmie E. Tinsley, Deputy Attorneys General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of armed robbery.

On August 19, 1966, an opinion (unpublished) was filed in this cause wherein the judgment was affirmed. About November 12, 1968, appellant filed a petition for writ of habeas corpus in the Supreme Court and the same was treated as a petition to recall the remittitur. The Supreme Court transferred the cause to this court with directions to recall the remittitur, vacate the judgment and proceed in accordance with present established law. We have complied with the order and appointed counsel to represent appellant.

In an information filed in Los Angeles County on May 18, 1965, Early Styles and James Young Lee were charged with robbing Louis M. Feldman and Blanche Feldman on April 23, 1965, of items, the total value of which was in excess of $3,000. It further was charged that at the time of the commission of the offense the defendants were armed with a deadly weapon, namely, a .38 caliber revolver. Each defendant pleaded not guilty. By stipulation the cause was submitted upon the transcript of the proceedings had in the preliminary hearing. The exhibits (excepting one) introduced into evidence at the preliminary hearing were received in evidence at the trial. There was no additional testimony. Defendants were found guilty as charged, and, further, it was found that each defendant was armed as charged. Each defendant was sentenced to the state prison. Defendant Lee filed a notice of appeal.

A résumé of some of the facts is as follows: On the evening of April 20, 1965, Mr. and Mrs. Louis Feldman while returning to their apartment drove into their underground garage in

Beverly Hills. When Mr. Feldman started to get out of the car he felt a gun in his back and heard a voice direct, "Stick them up." Styles was the person who held the gun. Feldman looked and saw Lee on the other side of the car talking to Mrs. Feldman. Mrs. Feldman identified both men as the robbers. Styles took Feldman's wallet, keys, wrist watch and a ring, totaling in value in excess of $3,000. Lee took Mrs. Feldman's purse.

Officer Mann, of the Beverly Hills Police Department, on the night of April 20, 1965, saw an automobile southbound on Roxbury Drive without lights. The officer stopped the car. Styles was driving. Lee occupied the passenger seat. When Styles was asked for his operator's license, he stated that he did not have one. The registration slip for the vehicle could not be found. Seemingly there was some question as to who owned the car. ". . . First, it was one cousin and then another cousin." The occupant was asked by the officer to get out of the car. A traffic citation was being written when a police broadcast was heard by the officer to the effect that a robbery had occurred at the Feldman address, which was about four blocks from where Styles and Lee were first seen driving the unlighted car. The broadcast described the robbers as two male Negroes, one of them about 6 feet in height and wearing a dark coat, the other shorter and wearing a dark sweater. Styles was wearing the described sweater and Lee fitted the description of the other suspect. There was no variance in the description as received over the radio and the appearance of the two defendants. The officer called for police assistance and received it forthwith. The defendants were placed under arrest and Styles was searched. Feldman's billfold and contents, and Feldman's ring were found in Styles' pants pocket. A search of the vehicle was made and under the seat Mrs. Feldman's purse was found and a loaded revolver was located behind a "kick panel" near the right door. Feldman's wrist watch was on the front seat under Styles' coat.

At the preliminary hearing on May 7, 1965, before any testimony was taken the deputy district attorney in effect asked the court to make inquiry as to whether or not the privately retained and engaged counsel for defendants had explored the possibility of any conflict of interest, and counsel for defendants indicated that he had made such an exploration and apparently there was no conflict of interest between the defendants. Neither defendant made any objection to pro-

ceeding with their private counsel nor did either defendant take the witness stand or make any statement at the preliminary hearing.

When the cause came on for trial in the superior court on July 12, 1965, the defendants personally and all counsel waived a jury trial. By stipulation the cause was submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing, with each side reserving the right to offer additional evidence and all stipulations entered into at the preliminary hearing were deemed entered into in the trial court proceedings, further the exhibits (with the exception of Mr. Feldman's wallet) were deemed received into evidence subject to the court's rulings. Neither defendant elected to make any statement at the time of trial or to testify from the witness stand. No demand or request was made by either defendant, on the contrary each proceeded with the retained private counsel and seemingly was satisfied with his performance at that time.

Appellant now asserts that the dual representation created a conflict of interest and in effect denied him effective representation, that the officers did not have reasonable cause to arrest him or to conduct a search and that he should not have been found guilty of robbery in the first degree and of being armed (that the "armed" allegation should be stricken from the judgment).

As heretofore indicated, appellant, apparently with his codefendant, engaged an attorney to represent them. That attorney checked as to whether there was any conflict of interest and obviously ascertained that there was no conflict of interest between the codefendants. There was no inconsistency in any story that either defendant related, neither took the witness stand to tell of an alibi or otherwise, neither challenged the credibility of the other and neither one placed the blame for the crime onto the other.

Appellant seems to rely chiefly on *People* v. *Chacon*, 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106]. His reliance is misplaced.

The facts of *Chacon* are in nowise comparable to the facts of this case. In the case at hand there was nothing to give the court in either instance (preliminary or trial) the slightest idea that there was any conflict of interest, indeed the exact opposite appears to be the case.

What is said in *People* v. *George*, 259 Cal.App.2d 424, 432 [66 Cal.Rptr. 442], in quoting from *People* v. *Odom*, 236 Cal.

App.2d 876, 877-880 [46 Cal.Rptr. 453], is appropriate: "As stated in *People* v. *Odom,* 236 Cal.App.2d 876, 879-880 [46 Cal.Rptr. 453], the fact that a single attorney is appointed to represent multiple defendants does not mean that an individual has been deprived of his right to counsel. Rather, an actual or potential conflict of interest among the codefendants must appear. The *Odom* opinion assembles a useful category of the principal situations in which the courts have discerned conflicts of interest such as: when it would profit one defendant to attack the credibility of another; when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another; when one defendant has a record of prior felony convictions and the other does not; when the defenses of the codefendants are factually inconsistent; or when appointed counsel believes a conflict of interest may exist." And in *People* v. *Jolke,* 242 Cal.App.2d 132, 140-141 [51 Cal.Rptr. 171] ; where it is said:

"It is unquestioned that the right to counsel connotes effective aid in the preparation and trial of the case. [Citations.] Where at most there is faulty judgment on the part of an attorney selected by the defendant there is no deprivation of the effective aid of counsel in the constitutional sense. [Citations.] On the other hand, where counsel's lack of diligence or competence reduces the trial to a farce or sham the defendant has been deprived of the representation contemplated by the Constitution. [Citation.] A corollary of the right to effective assistance is the right to have separate counsel upon request, or upon objection to having the same counsel, where it is reasonably probable the interests of each of two or more defendants will require the pursuit of a different course. [Citations.]

"Nevertheless, the mere fact that one attorney represents multiple defendants does not deprive one of the defendants of his right to counsel, and the burden is on the defendant to advise the trial court of any alleged conflict of interest. [Citations.] Where as here, the defendant has been represented by counsel of his own choice, the following is pertinent: 'He was represented by private counsel of his own choice; he at no time raised any objection to him, to the manner in which he was being represented, or to the fact that counsel also represented Gillis and Margaret, nor did he ever suggest there was a conflict of interest between him and his codefendants or indicate that he desired a change of counsel. The issue he now raises was never brought to the attention of the trial court,

and under the circumstances it was under no duty to ascertain whether a conflict of interest might arise.' [Citations.]'"
See also *People* v. *Ingram,* 269 Cal.App.2d 483, 486 [75 Cal.Rptr. 228].

The primary issue in this case was identity and both of the victims positively identified both defendants as the robbers. The judge believed the Feldmans. The case was simple and complete and not close in any respect.

■ Appellant intimates that perhaps counsel could have argued that he was less guilty than his codefendant because appellant was not personally armed. Such a state of facts "does not make him any the less, in a legal sense, guilty of robbery in the first degree, . . ." (*People* v. *Perkins,* 37 Cal. 2d 62, 64 [230 P.2d 353]; *People* v. *Parker,* 253 Cal.App.2d 567, 573-574 [61 Cal.Rptr. 411].)

■ There was no conflict of interest or error flowing from the course which was followed, but even if there were, under the circumstances here any error was harmless beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18 [17 L.7d.2d 705, 87 S.Ct. 824].)

■ As to whether there was probable cause to arrest and search appellant under the circumstances we are persuaded that the police officers in this case would have been guilty of a serious dereliction of their duty had they not arrested and searched the defendants and the car knowing what they knew at the time. The Feldmans under the law were reliable informants. (See *People* v. *Gardner,* 252 Cal.App.2d 320, 324, 325 [60 Cal.Rptr. 321]; *People* v. *Lewis,* 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 579].) (See also *People* v. *Poindexter,* 51 Cal.2d 142, 149 [330 P.2d 763]; *People* v. *Guidry,* 262 Cal. App.2d 495, 498 [68 Cal.Rptr. 744]; *People* v. *Gardner,* 252 Cal.App.2d 320, 324 [60 Cal.Rptr. 321].)

An arresting officer is entitled to rely upon information received from official sources and there is no legitimate suggestion that the police radio calls with reference to the robbery came from anywhere other than the police department and the department was obviously getting its information as to the identity of the robbers from the victims. (See *People* v. *Ross,* 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Estrada,* 234 Cal.App.2d 136, 152 [44 Cal.Rptr. 165, 11 A.L.R. 3d 1307]; *People* v. *Wright,* 216 Cal.App.2d 866, 868, 869, 871 [31 Cal.Rptr. 432]; *People* v. *Romero,* 156 Cal.App. 2d 48, 49-50 [318 P.2d 835].) See also *People* v. *Hogan,* 71 Cal.2d 888 [80 Cal.Rptr. 28, 457 P.2d 868] (Aug. 20,

1969). There was no variance from the police radio broadcast description and the defendant's appearance. There was no specific objection by counsel to the testimony of the officer in relating what was said over the police broadcast or as to the source of the broadcast information. See *People* v. *Escollias,* 264 Cal.App.2d 16, 19 [70 Cal.Rptr. 65] to the effect that unless a specific objection is made the issue cannot be raised for the first time on appeal.

Appellant has attempted to raise additional points which his appointed counsel has set forth in a separate part of his brief. First he claims that his rights were violated by an illegal lineup. There is nothing in the record in this case to indicate that there was ever a lineup at any time and we will not consider matters outside the record. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834].) Secondly he asserts that to convict him of first degree robbery it must have been proved that he possessed a weapon and that he was not personally armed as was his codefendant. Such is not the law. (See *People* v. *Perkins,* 37 Cal.2d 62, 64 [230 P.2d 353]; *People* v. *Parker,* 253 Cal.App.2d 567, 573-574 [61 Cal. Rptr. 411].) Lastly he argues that the court made no special verdict that he was armed. None was required. The general verdict was sufficient under the circumstances. (Pen. Code, §§ 1151 and 1167; *People* v. *Golston,* 58 Cal.2d 535, 540 [25 Cal.Rptr. 83, 375 P.2d 51].)

Finally appellant's counsel contends that the "armed" allegation should be stricken from the judgment. It is interesting to note in this connection that the appellate courts in the recent past have asserted, in effect, that it was not the intention of the Legislature to impose an additional punishment upon a defendant for being armed in a first degree robbery case and particularly so where the statute might be interpreted as meaning that the use of a weapon was an element of the offense. In Senate Bill #137, the 1969 Legislature adopted a bill which adds section 12022.5 to the Penal Code. That bill requires additional punishment of imprisonment for a period of not less than five years for any person who uses a firearm in the commission or attempted commission of robbery, assault with a deadly weapon, murder, rape, burglary, or kidnapping and requires that such additional punishment run consecutively with the punishment for the crime for which such person is convicted, and further specifies additional periods of imprisonment, to run consecutively, for the second, third, or fourth or subsequent convictions under

like circumstances. Further, the bill provides that it "shall apply even in those cases where the use of a weapon is an element of the offense." It would seem that there can be no doubt of the legislative intent at this time.

The Supreme Court of this state has recently (August 20, 1969) had occasion to pass upon the questions involved in pronouncing a judgment in a robbery case where it was charged and established that the defendant was armed with a deadly weapon at the time of the commission of the offense. See *People* v. *Floyd*, 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862] ; *People* v. *Hogan*, 71 Cal.2d 888 [80 Cal.Rptr. 28, 457 P.2d 868] ; and *People* v. *King*, 71 Cal.2d 885 [80 Cal. Rptr. 26, 457 P.2d 866]. According to the rules laid down in the above cited cases "The recitals in the judgment of conviction that defendant was armed with a deadly weapon should be modified to provide that at the time of the commission of the offense sections 3024 and 12022 of the Penal Code were inapplicable but defendant was armed within the meaning of section 1203 of the Penal Code. The judgment should also specify the nature of the weapon."

The judgment is reversed and the cause remanded for resentencing in accordance with the views expressed in the cited cases.

Wood, P. J., and Lillie, J., concurred.