590 P.2d 508 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Glen Barrington BAILEY and Charles Allen Hernandez, Defendants-Appellants.
No. 76-468.
Colorado Court of Appeals, Div. 3.
October 12, 1978.
Rehearing Denied November 2, 1978.
Certiorari Granted January 8, 1979 and February 13, 1979.
J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., David Schwartz, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Shelley B. Don, Denver, for defendant-appellant Glen Barrington Bailey.
Alfred C. Harrell, Denver, for defendant-appellant Charles Allen Hernandez.
*509 VanCISE, Judge.
Following a trial to the court, defendants Bailey and Hernandez, together with one Shirley Ann Veldez, now deceased, were convicted of sale of narcotics drugs, dispensing dangerous drugs, and conspiracy to sell narcotic drugs. Defendants appeal, and we affirm.
In January of 1976, the Colorado Bureau of Investigation (CBI) was investigating drug traffic at Denver Juvenile Hall. Hampton, a special operator for the CBI, was assigned to work at Juvenile Hall. To accomplish this, he posed as a Metropolitan State College student.
In the latter part of January 1976, Hampton met defendant Bailey who was employed at Juvenile Hall as a youth counsellor. At this meeting Hampton directed the conversation to the subject of drugs, and Bailey stated that he could obtain anything Hampton wanted in that line. On February 2, Hampton told Bailey that he was working for a mafia chieftain from the east coast by the name of Bonelli. Bonelli was actually CBI agent Brown. Hampton said that Bonelli was in Denver to take over the illegal drug traffic in Colorado penal institutions. Hampton arranged a meeting between Brown and Bailey for February 6.
At that meeting, Brown, posing as Bonelli, asked Bailey if he could obtain large amounts of narcotics. Bailey stated that he could, and Brown thereupon requested that he obtain samples of cocaine and marijuana. Bailey then contacted a drug source and obtained the drugs. Bailey met Brown later that day, delivered the drugs, and was paid.
Brown and Bailey next met on February 11. After discussing how Brown could take over the drug traffic in the penal institutions and Bailey's potential role in this undertaking, Brown asked Bailey if he could obtain a sample of heroin. Bailey said that he could.
Bailey then contacted defendant Hernandez, and told him that he needed a sample of heroin. Hernandez contacted Shirley Veldez, and Hernandez and Veldez obtained the heroin, which Hernandez delivered to Bailey. Bailey again met with agent Brown on February 12, delivered the sample of heroin, and was paid.
On February 16, Bailey, Hernandez, and Brown twice met at Bailey's home. At the first meeting Brown told Hernandez that he needed another sample of heroin. Hernandez agreed to get it. Hernandez told Brown the heroin would cost $1100 per ounce, and that his "connection" was Shirley Veldez. At the second meeting, Hernandez handed the second sample of heroin to Brown, and was paid.
On February 17, Bailey, Hernandez, Veldez, and Brown met at Bailey's home. At that meeting Veldez stated to Brown that she had given the first heroin sample to Hernandez, who had given it to Bailey. She also stated that she had given the second sample to Hernandez to give to Brown.
On February 18, agent Brown telephoned Veldez about the purchase of another heroin sample. They met later in the day and Veldez delivered a third heroin sample. Both defendants and Veldez were arrested on or shortly after February 19.
At the conclusion of the trial, the court found: (1) Bailey guilty of sale of cocaine and of dispensing a dangerous drug on February 6; (2) Bailey, Hernandez, and Veldez guilty of sale of heroin on February 12; (3) Bailey, Hernandez, and Veldez guilty of sale of heroin on February 16; (4) Veldez guilty of sale of heroin on February 18; and (5) Bailey, Hernandez, and Veldez guilty of conspiracy to sell narcotic drugs. Veldez died pending this appeal, and her appeal has been dismissed.

I.
Defendants first claim that they were entrapped by law enforcement officials. Section 18-1-709, C.R.S.1973, provides:
"The commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement *510 official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain that evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced. Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used."
Defendants claim that this statute enacts an objective or "reasonable man" test. We disagree.
The statute codifies the subjective test. "[T]he defendant's predisposition to commit the crime, rather than the conduct of the government agent, remains the dispositive factor in determining whether entrapment has occurred." People v. Sanchez, Colo.App., 580 P.2d 1270 (1978). Merely providing an opportunity for a person to violate the law is not entrapment. People v. Ross, 182 Colo. 267, 512 P.2d 1154 (1973). And this is true even when the agent initiates the contact for the purchase of the drugs. People v. Ross, supra; People v. Lee, 180 Colo. 376, 506 P.2d 136 (1973).
In this case the evidence shows that the law enforcement officials posed as big time gangsters, with all the trappings, including guns, talk of "snitches" they had "eliminated," and even the presence of the "family counsellor." We cannot hold that there was entrapment as a matter of law. Therefore, the trial court, as the trier of the facts, did not err in concluding that the evidence did not "create a reasonable doubt with respect to the guilt of the defendants on the issue of entrapment."

II.
Defendants next claim that the previously discussed conduct of the CBI agents constituted duress, and that it was error for the trial court to hold to the contrary. We disagree.
Section 18-1-708, C.R.S.1973, provides:
"A person may not be convicted of an offense, other than a Class 1 felony, based upon conduct in which he engaged because of the use or threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been unable to resist. This defense is not available when a person intentionally or recklessly places himself in a situation in which it is foreseeable that he will be subject to such force or threatened use thereof."
Here, no claim is made that the agents used actual force, nor was there anything in the testimony indicating that these crimes were committed because of threats made by the agents. Moreover, even if the first part of the statute were satisfied, defendants intentionally or recklessly placed themselves in a situation in which it was foreseeable that they might be subjected to force or threatened use of force. There was no duress here.

III.
Defendants also claim that they cannot be convicted because they were merely "procuring agents" of the buyers, agents Hampton and Brown. We do not agree.
The procuring agent defense is available to defendants charged with the offense of sale or conspiracy to sell narcotics, Santiago v. People, Colo., 558 P.2d 441 (1977); People v. Fenninger, Colo., 552 P.2d 1018 (1976), but is inapplicable to a charge of dispensing. People v. Dinkel, 189 Colo. 404, 541 P.2d 898 (1975). As to the sale and conspiracy charges here, the facts are different from the situation in Fenninger. Bailey and Hernandez were contacted by the agents and asked if they could obtain drugs. They indicated that they could. They located and purchased drugs from the source, and then sold the drugs to the agents. The procuring agent defense does not apply to this situation.

IV.
Finally, defendants claim that the conduct of the police agents in this case was *511 so outrageous as to violate the due process clause of the Fourteenth Amendment. We agree with the trial court, which found that this claim is "devoid of evidence and legal merit."
Judgment affirmed.
RULAND and STERNBERG, JJ., concur.