Mark T. MEADOR *v.* STATE of Arkansas

CA CR 83-132                                    664 S.W.2d 878

Court of Appeals of Arkansas
Division II
Opinion delivered February 8, 1984
[Rehearing denied March 7, 1984.]

*William C. McArthur,* for appellant.

*Steve Clark,* Atty. Gen., by: *Velda West Vanderbilt,* Asst. Atty. Gen., for appellee.

JAMES R. COOPER, Judge. In this criminal case, the appellant was charged with attempted robbery. After a trial by jury, he was found guilty and sentenced to ten years in the Arkansas Department of Correction. From that decision, comes this appeal.

In the early morning hours of February 1, 1982, the appellant entered a nursing home in Perryville, Arkansas, and asked to use the telephone, stating that he had run out of gas. The appellant was unsuccessful in obtaining help and the attendant offered to try to obtain help for him by calling a friend. Just as the attendant completed dialing the phone number of the sheriff's department where a friend of hers worked, the appellant disconnected her and brandished a pistol, announcing he was holding up the nursing home. Upon being informed by the attendant that she had contacted the sheriff's office, and after hearing an alarm sound, the appellant fled. Later that morning a .380 caliber semi-automatic pistol was found behind the nursing home. There were also footprints in the snow and mud leading off from that point.

Upon fleeing the nursing home, the appellant went to the nearby residence of Judy (Wise) Stain, the assistant administrator of the nursing home, with whom the appellant was acquainted. Mrs. Stain testified that the appellant appeared at her home at around 3:15 a.m. on February 1, 1982, and stated that someone had picked him up at his apartment in Conway and attempted to collect some money from him. He stated the men who picked him up were going to use him to rob some place in order to collect their money, but that he had gotten away from them and not to worry. After this, the appellant was taken by Mrs. Stain's sister to a spot near the Bigelow Junction to meet his girl friend who came from Conway to pick him up.

At the appellant's trial for attempted robbery, the State attempted to introduce the pistol found near the nursing home through Sheriff Byrd. The appellant challenged its introduction on the grounds it was not properly authenticated due to an incomplete chain of custody, and also the fact

that the serial number of the weapon was not on the receipt made on the pistol when it was found.

The appellant asserts that Uniform Rules of Evidence, Rule 901, Ark. Stat. Ann. § 28-1001 (Repl. 1979), requires sufficient identification and authentication of evidence to support a finding that the evidence is what it is purported to be. He also states the cases interpreting this rule require only a common sense approach. The appellant argues, however, that when one considers the fact that the serial number of the gun which was purported to be on a receipt was not, and no recorded serial number is available, along with the weapon being out of the sheriff's custodian's hands for a substantial period of time with no verification, then the authentication is doubtful. We disagree.

Following the incident at the nursing home, Sheriff Byrd and the Perryville City Marshal, Troy England, searched the woods behind the nursing home. At the appellant's trial, Mr. England identified state's exhibit #7 as the gun he found during that search. Mr. England testified that Sheriff Byrd made a receipt and recorded the serial number of the gun on it. The receipt was then typed at the sheriff's office and the weapon remained there except for the time it was with the State Crime Lab. The description on the receipt matched the weapon and both Sheriff Byrd and Marshal England identified the pistol as the one which was found behind the nursing home.

The purpose of the rule requiring a chain of custody is to guard against the introduction of evidence which is not authenticated. In establishing a chain of custody prior to the introduction of evidence at the trial, it is not necessary to eliminate every possibility that the evidence has been tampered with. The fact that the weapon was not in the Sheriff's possession at all times and also that there was no serial number of the receipt, goes to the weight to be given the evidence, rather than its admissibility. *Gardner* v. *State,* 263 Ark. 739, 569 S.W.2d 74 (1978); *Bedell* v. *State,* 260 Ark. 401, 541 S.W.2d 297 (1976) cert. denied, 430 U.S. 931, 97 S.Ct. 1552, 51 L. Ed. 2d 775 (1977). The issue is whether the trial court abused its discretion in determining that in reasonable

probability the integrity of the evidence was not impaired and that it had not been tampered with. *Callison* v. *State,* 1 Ark. App. 335, 615 S.W.2d 406 (1981); *Baughman* v. *State,* 265 Ark. 869, 582 S.W.2d 4 (1979). From the unequivocal identification of the pistol by Sheriff Byrd and Marshal England and the circumstances surrounding the discovery of the weapon, we find the trial court properly admitted the pistol into evidence.

The appellant's second point for reversal concerns the trial court's refusal to grant a mistrial when the prosecutor questioned one of the appellant's witnesses concerning a prior conviction of the appellant. The character witness had stated the appellant's reputation for truth and honesty was good. On cross-examination, the prosecutor asked the witness if he was aware of the appellant's prior conviction for obtaining controlled substances by fraud and if this would change his opinion of the appellant. In *Caldwell* v. *State,* 267 Ark. 1053, 594 S.W.2d 24 (1980), the Arkansas Supreme Court stated:

> "When the defendant produced five character witnesses the trial court ruled it proper for the prosecutor to cross-examine the witnesses by asking whether their opinions as to the defendant's reputation would be altered by knowing of the defendant's prior conviction. This was proper pursuant to Ark. Stat. Ann. § 28-1001, Rule 405(a) (Repl. 1979).

We find no merit to this argument.

The appellant's third point for reversal concerns the trial court's refusal to give the appellant's proffered instruction on the defense of duress. The instruction given by the court on the appellant's defense of duress was AMCI 4001 and it stated as follows:

> Mark Meador asserts the affirmative defense of duress to the charge of aggravated robbery and attempted aggravated robbery. To establish this defense, he must prove that he engaged in the conduct charged because he reasonably believed that he was compelled to do so

by the threat of unlawful force against his person that an individual of ordinary firmness in Mark Meador's situation would not have resisted.

Duress is not a defense if Mark Meador recklessly placed himself in a situation in which it was reasonably foreseeable that he would be subjected to the force or threatened force.

Mark Meador has the burden of proving an affirmative defense by a preponderance of the evidence, unless the affirmative defense is so proved by other evidence in the case. "Preponderance of the evidence" means the greater weight of evidence. The greater weight is not necessarily established by the greater number of witnesses testifying to any facts or state of facts. It is the evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If the evidence with regard to the affirmative defense appears to be equally balanced or if you cannot say upon which side it weighs heavier, then the affirmative defense has not been established.

If you find that this defense has been established by the Defendant, then you shall find Mark Meador not guilty of aggravated robbery.

Whatever may be your findings as to this defense you are reminded that the State still has the burden of establishing the guilt of Mark Meador upon the whole case beyond a reasonable doubt.

The appellant sought to have paragraph two of the instruction deleted. From the evidence adduced at trial, particularly the testimony of the appellant concerning why he owed the debt to the men who allegedly forced him to rob the nursing home, it could be inferred that the appellant's drug dependence placed him in the position to be forced by these men to do something he might otherwise not do. Thus the trial court's instruction that the appellant could not claim the defense if he recklessly put himself in that position was proper under the circumstances of the case.

The trial court is not to modify the AMCI instructions unless it is clear that, in a given case, the instruction incorrectly applies the law to the facts. *Conley* v. *State*, 270 Ark. 886, 607 S.W.2d 328 (1980).

Finally, the appellant argues that the evidence is insufficient to support his conviction. This argument is without merit. The appellant was identified by two witnesses at trial as the man who entered the nursing home and announced it was a "stick up;" the appellant had been to the nursing home on numerous occasions to visit his grandmother and therefore was familiar to the nursing home personnel. The appellant was identified by Mrs. Stain as the person who came to her home shortly after the attempted robbery took place, and took off the clothes he had on which were identified as the clothes worn by the robber. He was identified by Mrs. Stain's sister as the person she took to meet someone at Bigelow Junction. We find that there was substantial evidence to support the appellant's conviction, and therefore we must affirm. *Small* v. *State*, 5 Ark. App. 87, 632 S.W.2d 448 (1982).

Affirmed.

CLONINGER and CORBIN, JJ, agree.