**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Pedro BLANCO, Defendant-Appellee.**

No. 83–5485.

United States Court of Appeals, Eleventh Circuit.

March 8, 1985.

Jeffrey D. Fisher, Sp. Asst. U.S. Atty., Linda Collins Hertz, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellant.

Law Offices of Fernandez, Caubi, Fernandez & Aguilar, P.A., Luis Fernandez, Miami, Fla., for defendant-appellee.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, District Judge.

ATKINS, District Judge:

A complaint was filed by the United States of America against the appellee, Pedro Blanco, to collect a fine of $43,000 imposed against him for bringing into the United States from Cuba on June 3, 1980, a group of 43 undocumented aliens. At a ·trial on the merits it was shown that (a) he had in April, 1980 brought 60 undocumented aliens into the United States and had been notified he would be fined $1000 for each such alien and (b) when he returned later to Cuba to ·pick up his relatives the Cuban authorities told him he had to take aboard his vessel 43 refugees, otherwise his boat would be confiscated and he would have to leave on another boat or remain in Cuba as a prisoner. Holding that Blanco was subject to duress and coercion, the district court found that no fines should be imposed and entered final judgment for

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

Blanco. We find that Blanco voluntarily returned to Cuba on the second occasion intending to violate Title 8 U.S.C. § 1323[1] and, not being threatened with immediate serious bodily injury or death to himself or his family, he was precluded as a matter of law from raising the defense of duress. Accordingly, we reverse and remand for determination of the fine to be imposed.

### Findings of Fact

The Government does not substantially dispute the District Court's findings, except in one particular noted infra, page 3.

On or about April 22, 1983, Pedro Blanco, a fisherman residing in Key West, Florida, left Key West in his fishing vessel and traveled to Mariel Harbor, Cuba in order to transport to the United States, seven members of his family. Blanco's boat was one of a large number of vessels that left Key West during April and May of 1980, and which comprised what was popularly known as the "Freedom Flotilla," bringing refugees from Castro's Cuba to the United States. Upon arrival in Cuban waters, Blanco was escorted into Mariel Harbor by Cuban naval frigates, at which point his vessel was boarded by soldiers and Cuban immigration personnel who searched his boat and informed him that he would have to wait for two or three days until his relatives could be collected and brought to his vessel for embarkation. After waiting in the harbor for four days, Blanco was told by the authorities that he had to take a boatload of refugees to the United States before he would be allowed to board his relatives, who had not yet appeared at the harbor. He was promised that if he took a boatload of refugees, his relatives would be waiting upon his return and that they would be allowed to leave Cuba with him. On or about April 26, 1980, Blanco left Mariel Harbor with 60 Cuban nationals aboard his vessel. Later on that day he arrived at Key West where he was served with Immigration and Naturalization Service Form I–79, Notice of Intention to Fine.[2] Blanco remained at Key West for four or five days and then returned with his vessel to Cuba to pick up his relatives in accordance with his understanding with the Cuban authorities.

On this second trip, Blanco was once more met by Cuban naval vessels and escorted to the harbor where he was again boarded. He was told by the authorities that his relatives were available, but that he would have to wait for them. Blanco waited in his boat for over a month, but at no time did his relatives arrive. Finally, when he decided to leave, he was told by the authorities again that he had to take a boatload of refugees. He was told that if he did not do so, they would confiscate his boat and he would have to return to the United States on another boat.[3] Forty-three Cuban refugees were forced aboard Blanco's boat and he transported them to Key West. When Blanco arrived at Key West on June 3, 1980, he was served with Immigration and Naturalization Service Form I–79, Notice of Intention to Fine. He heard this time, though not after his first trip, that the government was intending to fine persons who brought in Cuban refugees without an immigration visa, $1,000 per person, but he did not understand that he was being fined at the time of his arriv-

---

1. Title 8 U.S.C. § 1323 makes it "... unlawful for any person ... to bring to the United States from any place outside thereof (other than from foreign contiguous territory) any alien who does not have an unexpired visa...."

2. Form I–79 informed Blanco that he was being fined $1,000 for each undocumented alien he brought into the United States in violation of 8 U.S.C. § 1323 and that he had 30 days to file a written defense setting forth reasons why the fine should not be imposed or why it should be mitigated.

3. The trial Court found Blanco was told that if he did not take back the second boatload of refugees "his boat would be confiscated and he would remain in Cuba as a prisoner." We find this to be clearly erroneous. Blanco testified:

Q Did officials in Cuba threaten you if you didn't take back the second group of people? A Yes. If I wasn't going to bring those people over, they would take away the boat from me and I would have to go back on another boat. If not, I would have to stay there as a prisoner.

al. Blanco was served with another Form I–79 by Certified Mail on October 28, 1980. Blanco did not file a written defense within thirty days of the notice.

On February 5, 1981, a final decision to fine Blanco $43,000.00 was made, and on February 9, 1981, Blanco was served with a copy of that decision.

### The Defense of Duress

■■■ The government urges that the District Court erred as a matter of law in finding that Blanco acted under duress for which reason he was not liable for the fine imposed under § 1323. To establish a defense of duress Blanco must show that he performed the unlawful act because (1) he was under an immediate threat of death or serious bodily injury, (2) he had a well grounded fear that the threat would be carried out, and (3) he had no reasonable opportunity to escape. *United States v. Shapiro,* 669 F.2d 593, 596 (9th Cir.1982) *citing United States v. Gordon,* 526 F.2d 406, 407 (9th Cir.1975); *United States v. Saettele,* 585 F.2d 307, 309 (8th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979), *United States v. Patrick,* 542 F.2d 381, 386–392 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). Duress can also exist when the threat of immediate, serious harm is directed at a third person and the defendant acted unlawfully in order to protect the other party. *See United States v. Bailey,* 585 F.2d 1087, 1096–97 n. 29 (D.C. Cir.1978), *rev'd on other grounds,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

### The Issue of Intent

■■ It is undisputed that Blanco intended at the outset to bring his seven family members, who were undocumented Cuban citizens, into the United States. This, under the teaching of *Shapiro,* 669 F.2d 593, precluded use of duress as legal excusal for his actions.

### Insufficiency of the Evidence to Support Duress Defense

■■ The evidence does not establish, indeed the District Court did not find, that Blanco or his relatives were "under an immediate threat of death or serious bodily injury." *United States v. Shapiro,* 669 F.2d at 596; *United States v. Patrick,* 542 F.2d at 386. Blanco concedes the applicability of *Shapiro* and urges that the District Court's findings "satisfy the three elements" of *Shapiro.* We disagree. Not only were the requisite threats of immediate serious bodily harm or death unproven, but Blanco voluntarily returned to Cuba a second time. It is his activity in bringing in undocumented aliens on that occasion, which he had a reasonable opportunity to avoid, which forms the basis for the subject fine. *See United States v. Bailey,* 444 U.S. at 410–11, 100 S.Ct. at 634–35; *United States v. Agard,* 605 F.2d 665, 667 (2nd Cir.1979).

### Blanco's Reckless or Negligent Conduct Bars Any Claim of Duress and Coercion

■■ Even if Blanco was faced with duress and coercion, his conduct bars such a defense. A claim of duress and coercion will not afford a valid excuse when a defendant has recklessly or negligently placed himself in a situation in which it was probable that he would be subject to duress. *United States v. Agard,* 605 F.2d 665, 667, (2d Cir.1979). Having been exposed to the demands of the Cuban authorities on his first trip, Blanco should have known that if he returned to Cuba there was a substantial likelihood of his being subject to some form of duress. He recklessly chose to return to Cuba despite the absence of any threats of bodily harm or death if he failed to return. Accordingly, he cannot now claim duress.

We REVERSE and REMAND for determination of the fine to be imposed at which time the District Court may consider circumstances as might warrant mitigation of the fine imposed by the District Director.