646 A.2d 1101

**Marvin Larvae WILLIAMS**

v.

**STATE of Maryland.**

**No. 1587, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Sept. 1, 1994.

Gary S. Offutt, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted to ALPERT, WENNER and DAVIS, JJ.

ALPERT, Judge.

One fundamental exception to the duress defense lies at the center of this appeal. Marvin Larvae Williams, appellant, was charged with attempted robbery with a deadly weapon, daytime housebreaking, and the use of a handgun in the commission of a crime of violence. Williams waived his right to a jury trial and a court trial commenced in the Circuit Court for Baltimore County (Kahl, J.) on February 23, 1993, at the close of which, the trial judge requested memoranda concerning the defense of duress. The case was resumed on May 4, 1993, at which time Williams was convicted of the charged offenses. He was sentenced to eight years imprisonment for attempted robbery with a deadly weapon, eight years for daytime house-

breaking, and five years imprisonment, without possibility of parole, for the use of a handgun in the commission of a crime of violence. All sentences were to run concurrently. Appellant noted a timely appeal and asks two questions:

1. Was the trial court clearly erroneous in convicting Appellant of the offenses with which he was charged?

2. Should the docket entries be amended to correctly reflect Appellant's convictions? [1]

## FACTS

The victim, the Reverend Chris Glenn Hale, lived at 8601 Gray Fox Road, Apartment 102 in Randallstown, Maryland at the time of the incident. On March 1, 1990 at or about 4:45 p.m., Hale heard a knock on his apartment door. He went to the door, looked through the keyhole, and saw Williams standing at the door. Hale asked who was there and Williams answered by mumbling, asking if a certain person resided at Hale's residence. Hale could not understand Williams so he partially opened the door, whereupon four men, including Williams, rushed through. One of the men, not Williams, proceeded to hold a gun to Hale's face. Hale noticed that three of the men were armed, but did not see if Williams was armed.

After the men entered Hale's apartment, they spread out around the apartment to search for other persons, and the apparent leader demanded that Hale divulge the location of "the money" and "the dope." Williams, in the meantime, kept telling the men that the "dope" was in Hale's apartment, that he and Hale were friends, and that he had been in the apartment the previous day where he had used the "dope" with Hale. After searching unsuccessfully for the "dope," Williams was forced to kneel next to Hale, and the three men made more demands of the both of them as to where the money and the dope were located. The men then allowed Williams to get up from the floor to make a telephone call.

---

1. The State agrees that the docket entries should be amended. Accordingly, it will be so ordered.

Williams spoke on the phone for about ten minutes, and when he got off the phone, he walked out of the bedroom with two of the men (including the leader), where they talked for about five minutes. Hale was then tied up and the men, including Williams, left shortly. Nothing was taken from Hale's apartment.

At the trial, Williams testified that he was abducted by the three men because they believed that he knew the whereabouts of the drug stash of one Chuckie Eubanks, a reputed drug dealer. Williams had borrowed money from Chuckie's brother, Rodney, and had been induced to make a drug run to New York in order to help repay his debt. The Eubanks organization required Williams to make a second trip to New York, during which Williams cooperated with the police and obtained the names, phone numbers, addresses, and license tag numbers of the parties involved in the drug deal. Apparently, the three abductors, who were former members of Eubanks's drug organization, knew of Williams's relationship with Eubanks and believed that he would know the location of the stash house. When Williams was abducted by the men, he told them that he did not know the location of the stash house. The men did not believe Williams and threatened to kill him if he did not disclose its location. Williams led the men to Hale's apartment, told them it was the stash house, and knocked on the door. Once inside Hale's apartment, Williams testified that he pretended to participate in the search of the premises. Williams also said that the phone call he made was to his mother and was done at the request of one of the abductors who instructed him to say that "everything was all right," the abductors being concerned because Williams's sister had witnessed the abduction.

### Duress

Williams asserts that the trial court erred because its decision was "predicated upon Appellant having engaged in criminal conduct in which he was not specifically directed to engage. Because of this, the trial court never even focused upon the question it actually had to resolve: whether any legal alternative existed for Appellant to the conduct in which he

engaged." In the instant case, the trial court heard the testimony of all the witnesses and concluded that

[t]he [Appellant] wants you to believe that he was victimized, that he was taken off the street, and by point of gun, forced to commit an armed robbery. That simply is not true. No one forced him to commit an armed robbery. No one forced him to go to the Reverend's house and demand money. The only thing these three persons wanted was to have the debt repaid, and they didn't care how it was done. The [Appellant] said, I don't care how I repay the debt, I just want to save my own soul, and I will commit an armed robbery to do it, and I will assist in the commission of an armed robbery if that satisfies the debt, if that appeases you and I am safe.

The court went on to find that the testimony taken as a whole did "lend [ ] some corroboration to [Appellant's] suggestion that, at least to some degree, [Appellant] was under duress." The court however, did qualify its finding by noting that the duress was not "to go to the stash house" but rather "duress to pay the debt." [2] Accordingly, the court aptly focused on a very narrow issue: "whether the fact that [appellant] was under duress to repay the debt, and thereby created the scenario for this offense, operates as a complete defense to the offense." The court requested additional memoranda on this issue and concluded that facts of this case did not support a

---

**2.** In closing argument, the prosecutor asserted:

What happened in this case is that there was a drug debt. The [Appellant] owed these guys money, as happens all the time, and these guys wanted to collect their money, and the debt became due on March 1st of 1990.

And on March 1st of 1990, in collection of that debt, they grabbed him off the streets, whether there was a machine gun or a handgun, we don't know, but I am convinced he probably was taken off the streets, and he was told the debt is due.

The trial judge apparently agreed. Even if the judge's conclusion was incorrect, that payment of the debt motivated the abduction, the evidence was still sufficient to establish that the abductors were seeking drugs and money and that appellant was willing to "assist in the commission of an armed robbery ... if that [appeased them] and [he] was safe."

finding of duress. Accordingly, we are faced with the question of whether a defendant's contributory actions can act as a bar to the availability of the defense of duress, *i.e.*, whether the appellant's conduct presents an exception to the applicability of the duress defense. We conclude that it does and explain.

▪▪▪ Chief Judge Orth, speaking for this court nearly a quarter of a century ago, explained that

> [i]n order to constitute a defense, the duress by another person on the defendant must be present, imminent, and impending, and of such a nature as to induce well grounded apprehension of death or serious bodily injury if the act is not done. It must be of such a character as to leave no opportunity to the accused for escape. Mere fear or threat by another is not sufficient nor is a threat of violence at some prior time. The defense cannot be raised if the apprehended harm is only that of property damage or future but not present personal injury.

*Frasher v. State*, 8 Md.App. 439, 449, 260 A.2d 656 (1970) (citing 1 *Wharton's Criminal Law and Procedure* (Anderson) § 123, pp. 262–264). *See also Wentworth v. State*, 29 Md.App. 110, 118, 349 A.2d 421 (1975), *cert. denied*, 278 Md. 735 (1976). Additionally, we noted that the defense of duress is not successful if the "compulsion arose by the defendant's own fault, negligence, or misconduct." *Frasher*, 8 Md.App. at 449 (citing 1 *Wharton's Criminal Law, supra*, § 123, p. 264; 16 C.J., Criminal Law, § 59, p. 91; 22 C.J.S., Criminal Law, § 44, p. 136; *Ross v. State*, 169 Ind. 388, 82 N.E. 781 (1907); *State v. Clay*, 220 Iowa 1191, 264 N.W. 77 (1935); *State v. Patterson*, 117 Or. 153, 241 P. 977 (1925); *People v. Merhige*, 212 Mich. 601, 180 N.W. 418 (1920)). *See also Darby v. State*, 3 Md.App. 407, 415–22, 239 A.2d 584 (1968).

Our research has not disclosed any controlling Maryland cases on this issue. Accordingly, we examine the legal reasoning and analysis from other state and federal jurisdictions.

### A. State Cases—Recent Cases

In *Commonwealth v. Knight*, 416 Pa.Super. 586, 611 A.2d 1199 (1992), the appellant, Terrence Knight, attempted to rob

a bar at gunpoint. When the owner of the bar pulled a gun, Knight said that there were other men outside, and ran out the door. Knight was later picked up by police and identified by the bar owner as the man who tried to rob the bar. *Id.* 611 A.2d at 1201. At trial, Knight relied upon the defense of duress. He asserted that he was forced to rob the bar by two men from whom he bought $60 worth of drugs earlier that day. Knight claimed that the drug dealers, armed with a knife and a baseball bat, found him at his girlfriend's house, and forced him under the threat of death to go to the bar and rob it. *Id.* 611 A.2d at 1201.

The court, citing 18 Pa.Cons.Stat.Ann. § 309(b),[3] which was adopted from the Model Penal Code, stated that the duress defense is unavailable if the actor "*recklessly* placed himself in a situation in which it was probable that he would be subjected to duress," or if the actor was "negligent in placing himself in such a situation, whenever negligence suffices to establish culpability to the offense charged." *Id.* 611 A.2d at 1203. Knight argued that the term "recklessly" in subsection (b) could not be easily comprehended by a lay person without legal assistance. *Id.* The court held that the term "recklessly" should be defined for a jury and that a definition of the term is "efficacious when considering the language and purpose behind the exception to the duress defense." *Id.* The

---

**3.** The Pennsylvania statute defined the duress defense, and the exception thereto, as follows:

§ 309 Duress

(a) General Rule.—It is a defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

(b) Exception.—The defense provided by subsection (a) of this section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices to establish culpability to the offense charged.

*Knight,* 611 A.2d at 1202–03.

court referred to the definitional section of the Pennsylvania Criminal Code, 18 Pa.Cons.Stat.Ann. § 103, which in turn referred to § 302 of the Code. Section 302 defined "recklessly" as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustified risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

*Id.* 611 A.2d at 1204. (quoting 18 Pa.Cons.Stat.Ann. § 302(b)(3)).

The court, therefore, concluded that § 302 provides the normal meaning of "recklessly" throughout the statute encompassing both the defense of duress as well as the elements of an offense. *Id.* 611 A.2d at 1204. In so doing, the court agreed with Knight's argument that "recklessly" and "negligence" did not have the same meaning within the context of the Criminal Code. *Id.* 611 A.2d at 1205. The court then went on to state that "recklessly" denotes more culpability than negligence:

there should be no exculpation if the actor recklessly placed himself in the situation in which it was probable that he would be subjected to duress. Though this provision may have the effect of sanctioning conviction of a crime of purpose when the actor's culpability was limited to recklessness, we think the substitution is permissible in view of the exceptional nature of the offense. The provision will have its main room for operation in the case of persons who connect themselves with criminal activities, in which case too fine a line need not be drawn. *When there is no more than negligence, however, on the actor's part in placing himself in a situation where duress was probable ... [t]he defense is excluded only on a charge which negligence suffices to establish culpability ... [t]he difference between*

*inadvertence and conscious risk creation involved in reck-lessness appears to justify discriminating in this way.*
*Id.* 611 A.2d at 1205 (emphasis in the original) (quoting Model Penal Code, Comments, Tentative Draft 10, at 8). The court held that the defendant, however, was not prejudiced by the trial court's failure to define the term "recklessly," and affirmed his conviction.

The Court of Appeals of Alaska in *Walker v. State,* 674 P.2d 825 (Alaska Ct.App.1983), held that the trial court's failure to define the term "recklessly" was not plain error. *Id.* at 830. Walker, the defendant, and his cohorts knocked on the door of a residence they planned to burglarize to make sure no one was home. *Id.* at 827. When the owner's son opened the door, the three men claimed they had car trouble and were in need of a telephone. *Id.* at 827. The men entered the dwelling, robbed it and later kidnapped and killed the owner and her son. *Id.* at 827. At trial, Walker claimed that he agreed to participate in the burglary, but from the moment his companions drew a gun, he had to go along with the other greater crimes out of fear for his well-being. Walker was tried for two counts of first-degree murder, two counts of kidnapping, one count of robbery, one count of burglary, and two counts of theft. Walker was convicted on all counts except the murder counts. *Id.* at 827. On appeal, the court concluded that under Alaska Stat. § 11.81.440(b),[4] duress is an affirmative defense and therefore the burden was on Walker to establish this defense. As he never objected to the instructions, the Court held that the trial court's failure to define the term "recklessly" did not constitute plain error. *Id.* at 827–29.

---

4. The Alaska statute defined duress and an exception thereto as follows:
   Duress. (a) In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was coerced to do so by the use of unlawful force upon him or a third person, which force a reasonable person in his situation would have been unable to resist.
   (b) The defense of duress is not available when a person recklessly places himself in a situation where it is probable that he will be subject to duress.
   *Walker,* 674 P.2d at 827.

In *Meador v. State*, 10 Ark.App. 325, 664 S.W.2d 878 (1984), Meador was charged with attempted robbery. Testimony at trial revealed that Meador tried to rob a nursing home after some men to whom he owed money picked him up at his apartment and said they were going to use him to rob an establishment to collect their money. *Id.* 664 S.W.2d at 880. Meador therefore objected to the trial court's instructions that duress is not a defense if he "recklessly placed himself in a situation in which it was reasonably forseeable that he would be subjected to the force or threatened force." *Id.* 664 S.W.2d at 881. The Arkansas Court of Appeals found no error in the trial court's jury instruction, concluding that from

the evidence adduced at trial, particularly the testimony of the appellant concerning why he owed the debt to the men who allegedly forced him to rob the nursing home, it could be inferred that the appellant's drug dependence placed him in the position to be forced by these men to do something he might otherwise not do. Thus the trial court's instructions that the appellant could not claim the defense if he recklessly put himself in that position was proper under the circumstances of the case.

*Id.* 664 S.W.2d at 881.

The Washington State Court of Appeals reached a similar conclusion in *State v. McKinney*, 19 Wash.App. 23, 573 P.2d 820 (1978). There the defendant, McKinney, was convicted of robbery in the first degree while armed with a firearm. Apparently, McKinney and a companion, both of whom were escapees from a prison work release program, robbed a tavern where they had been drinking for several hours. *Id.* 573 P.2d at 820. As his companion pointed a gun at the bartender, McKinney emptied out the cash drawer. McKinney testified at trial that he was "coerced into taking the money from the till and that, had he not cooperated with his companion, either [McKinney] or the bartender might have been shot." *Id.* 573 P.2d at 821. In dismissing the duress defense, the court cited Wash.Rev.Code § 9A.16.060, which defines the elements of the duress defense. *Id.* Specifically, the court noted subsection (3), which provides that "[t]he defense of duress is not avail-

able if the actor intentionally or recklessly places himself in a situation in which it is probable that he will be subject to duress." *Id.* 573 P.2d at 821. Finding nothing on the record to suggest that McKinney "acted under any personal constraint or that he was threatened," the court held that the trial court did not err in failing to instruct the jury as to this affirmative defense. *Id.*

In *People v. Rodriquez*, 30 Ill.App.3d 118, 332 N.E.2d 194 (1975), the defendant, Rodriquez, was granted a three day furlough from jail and did not return, claiming that he was in fear of retribution from one of the corrections officers. *Id.* 332 N.E.2d at 196. Apparently, the officer had given Rodriquez money to buy a pound of marijuana while out on furlough, which Rodriquez subsequently spent while celebrating. *Id.* 332 N.E.2d at 196. The court held that the defense of compulsion, as defined by Ill.Rev.Stat. Ch. 38, sec. 7–11(a) (1973),[5] was not applicable. *Id.* 332 N.E.2d at 196. The court further noted that, even assuming the presence of the alleged threat, Rodriquez's assertion of compulsion fails because

> if [the compulsion] actually existed, [it] arose only from the defendant's appropriation for his own use of the funds given to him by the prison officer. Had the defendant returned the money instead of squandering it or had he completed the illegal scheme as planned, no compulsion would have arisen. Thus the compulsion resulted from the defendant's own negligence or fault, and the statutory defense is therefore inapplicable.

*Id.*

A similar result was reached by the Colorado Court of Appeals in *People v. Bailey*, 41 Colo.App. 385, 590 P.2d 508

---

**5.** In pertinent part, this statute defined compulsion as follows:

(a) A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct.

*Rodriquez*, 332 N.E.2d at 196.

(1978). There the defendants were convicted of the sale of narcotics, dispensing dangerous drugs, and conspiracy to sell narcotic drugs. *Id.* 590 P.2d at 509. The defendants claimed that the conduct of undercover CBI (Colorado Bureau of Investigation) agents, who posed as mafia gangsters and talked of eliminating "snitches," constituted duress. *Id.* 590 P.2d at 510. The court, citing Section 18–1–708 of the Colorado code (C.R.S.1973),[6] held that the facts did not support a finding of duress. The court further noted that, in any case, the duress defense was not available because "defendants intentionally or recklessly placed themselves in a situation in which it was foreseeable that they might be subjected to force or threatened use of force." *Id.* 590 P.2d at 510. *See also State v. Kinslow,* 165 Ariz. 503, 799 P.2d 844, 848 (1990) (noting that the duress defense was not available to a prison escapee because under Ariz.Rev.Stat.Ann. § 13–412(B) the duress defense is unavailable "if the person intentionally, knowingly or recklessly placed himself in a situation which it was probable that he would be subjected to duress."

### B. Federal Cases

In *U.S. v. Liu,* 960 F.2d 449 (5th Cir.1992), Liu, a government informant on illegal activity in the Houston, Texas, Asian community, was arrested for his involvement in a green card scam during a sting operation. *Id.* at 451. At trial, Liu claimed that he was acting out of fear of suffering injury or death at the hands of one of the police officers who initiated the sting operation. *Id.* at 452. The trial court, however, denied the instruction Liu submitted on the affirmative de-

---

**6.** This section of the Colo.Rev.Stat. § 18 (1973) states that

A person may not be convicted of an offense other than a class 1 felony, based upon conduct in which he engaged because of the use or the threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been unable to resist. This defense is not available when a person intentionally or recklessly places himself in a situation in which it is foreseeable that he will be subject to such force or threatened use thereof.

*Bailey,* 590 P.2d at 510.

fense of duress. *Id.* at 453. Affirming, the Court of Appeals for the Fifth Circuit held that the requested instruction did not conform to Fifth Circuit requirements for a successful duress defense and that even if the instruction was consistent with Fifth Circuit requirements, he was not entitled to the defense. *Id.* at 454–55. The Court explained that pursuant to *United States v. Harvey,* 897 F.2d 1300, 1304–05 (5th Cir. 1990), the defendant must show

> (1) that defendant was under an unlawful and 'present, imminent, and impending (threat) of such a nature as to induce a well-grounded apprehension of death or serious bodily injury.'; (2) that defendant had not 'recklessly or negligently placed himself in a situation in which it was probable that he would be (forced to choose the criminal conduct)'; (3) that defendant had no 'reasonable legal alternative to violating the law; a chance both to refuse to do the criminal act and also to avoid the threatened harm', and (4) 'that a direct causal relationship may be reasonably anticipated between the (criminal) action taken and the avoidance of (threatened) harm.'

The court also cited *U.S. v. Michelson,* 559 F.2d 567, 569 (9th Cir.1977); *U.S. v. Lee,* 694 F.2d 649, 654 (11th Cir.1983), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983); *U.S. v. Campbell,* 675 F.2d 815, 820–21 (6th Cir.1982), *cert. denied,* 459 U.S. 850, 103 S.Ct. 112, 74 L.Ed.2d 99 (1982) for the proposition that other circuits describe the defense in nearly the same manner. *Liu,* 960 F.2d at 453. *See also United States v. Gant,* 691 F.2d 1159, 1162–63 (5th Cir.1982); *United States v. Wheeler,* 800 F.2d 100, 107 (7th Cir.1986); *United States v. Blanco,* 754 F.2d 940, 943 (11th Cir.1985) (stating that "[a] claim of duress . . . [is not applicable] when a defendant has recklessly or negligently placed himself in a situation in which it was probable that he would be subject to duress"); *United States v. Agard,* 605 F.2d 665, 667 (2nd Cir.1979) (noting that a claim of duress "will not constitute a valid legal excuse when the defendant has recklessly or negligently placed himself in a situation in which it was probable

that he would be subject to duress.") (citing the Model Penal Code, § 2.09(2) (Ten. Draft No. 1960)).

*C. State Cases—Older Cases*

It is clear that the above-mentioned state cases rely heavily on a particular statute in that jurisdiction. The Maryland General Assembly, however, has not enacted any such statute. Accordingly, we now examine cases that do not rely on a statutorily enacted duress defense. Specifically, we focus on whether the rule that disqualifies a defendant from raising the defense of duress if the actor recklessly or negligently placed herself in the situation from which it arose has been recognized in instances where the particular jurisdiction had not statutorily enacted the duress defense.

In *People v. Merhige*, 212 Mich. 601, 180 N.W. 418 (1920), three bank robbers had defendant Merhige, a public taxi driver, drive them to and from the bank they robbed. At trial, Merhige pled guilty and was convicted of bank robbery. On appeal, Merhige stated that the robbers were total strangers and that he was not aware of their intentions to rob a bank. He further asserted that throughout the robbery, he was afraid for his life and that the robbers forced him to acquiesce to their demands. In reversing Merhige's conviction the Supreme Court of Michigan cited the definition of the duress defense found in 16 Corpus Juris at 91:

> An act which would otherwise constitute a crime may also be excused on the grounds that it was done under compulsion or duress. The compulsion which will excuse a criminal act, however, must be present, imminent, and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done. A threat of future injury is not enough. **Such compulsion must have arisen without the negligence or fault of the person who insists upon it as a defense.**

*Id.* 180 N.W. at 422. (emphasis added). In *People v. Kelly*, 51 Mich.App. 28, 214 N.W.2d 334, 335 (1974) the Court of Appeals of Michigan relied on *Merhige* as the "correct rule." In that case, the defendant, Kelly, was charged with armed

robbery and found guilty by the trial court. *Id.* 214 N.W.2d at 335. On appeal, Kelly alleged that the trial judge's instructions on the duress defense,[7] taken directly from *Merhige,* constituted prejudicial error. *Id.* 214 N.W.2d at 335. Concluding that *Merhige* "still is good law," the Court of Appeals of Michigan affirmed. *Id.* 214 N.W.2d at 335.

In *State v. Patterson,* 117 Or. 153, 241 P. 977 (1925), the defendant was convicted of larceny by embezzlement. On appeal, the defendant contended that the trial court committed reversible error when it instructed the jury that no evidence existed to support the defense of duress. The Supreme Court of Oregon, citing 16 C.J. 91, affirmed the defendant's conviction noting that the embezzlement "had its origin in the defendant's own voluntary shortcoming. He himself was the controlling and indispensable factor in the matter. He himself began the digression from the path of rectitude. Without his act, the situation which he claims was compulsory would not have occurred." *Id.* 241 P. at 978. *See also, State v. Clay,* 220 Iowa 1191, 264 N.W. 77, 83 (1935); *Ross v. State,* 169 Ind. 388, 82 N.E. 781 (1907).

In addition to the case law mentioned above, we also note that the Model Penal Code § 2.09 defines duress as follows:

(1) It is an affirmative defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

---

7. The instructions appealed were as follows:

But, it is the law in this state on that subject, an act which would otherwise constitute a crime may be excused on the grounds it was done under duress or compulsion but the compulsion must be present, imminent and impending and of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. A threat of future injury isn't enough to excuse the criminal character of the act and compulsion claimed by the defendant must have arisen without any negligence or fault on his part in order to constitute a defense to the crime.

(2) The defense provided by this Section is unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress. The defense is also unavailable if he was negligent in placing himself in such a situation, whenever negligence suffices to establish culpability for the offense charged.

Model Penal Code § 2.09 (10 U.L.A.) (1974 & Supp.1994). The Comments to Tentative Draft No. 10 indicate that the drafters recognized that "[i]n the absence of governing legislation, the case law generally recognizes the defense but imposes limitations on its scope similar to those articulated in the statutes." (footnote omitted) ALI, Model Penal Code § 2.09 (Tentative Draft No. 10, 1960). The drafters then specifically noted that

[s]ubsection (2) accepts the view that there should be no exculpation if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress. Though this provision may have the effect of sanctioning conviction of a crime of purpose when the actor's culpability was limited to recklessness, we think the substitution is permissible in view of the exceptional nature of the defense. The provision will have its main room for operation in the case of persons who connect themselves with criminal activities, in which case too fine a line need not be drawn.

*Id.* at 8. Additionally, the Explanatory Note to the Duress section of the Model Penal Code and Commentaries indicate that

[s]ubsection (2) deprives the actor of his defense if he recklessly placed himself in a situation in which it was probable that he would be subjected to duress. Thus, an actor reckless in this respect can be liable for offenses that carry a higher culpability standard than recklessness.

ALI, *Model Penal Code and Commentaries,* § 2.09 at 367 (1985). In 1 *Wharton's Criminal Law* § 52 (C.E. Torcia, 15th ed. 1993), the author notes that "[t]he defense of duress is not available if the defendant intentionally or recklessly placed himself in a situation in which it was reasonably foreseeable

that he would be subjected to coercion." (footnote omitted). *See also* 1 Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law* § 5.3 (1986) (noting that "[t]he defense of duress ... is a common law defense, applicable in appropriate cases although no statute makes it so."); 22 CJS *Criminal Law* § 52 (1989 & Supp.1994).

■ The reasoning of these cases and other authorities is persuasive and correctly states the law applicable in instances where the actor's contributory actions bar the availability of the defense of duress. These authorities make it clear that the defense of duress is founded in the common law and, as stated by the drafters of the Model Penal Code, does not provide "exculpation if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress." ALI, Model Penal Code § 2.09 (Tentative Draft No. 10, 1960). Additionally, we note that many of the statutes enacting the defense of duress substantially adopt the Model Penal Code definition of duress. *See e.g., Knight*, 611 A.2d at 1202–03 (quoting 18 Pa.Cons.Stat.Ann. § 309(b)); *Walker*, 674 P.2d at 827 (quoting Alaska Stat. § 11.81.440(b)). As noted previously, the Maryland General Assembly has not codified the defense of duress. Based upon the authorities cited above, we hold that where an actor recklessly (as defined in § 2.02 of the Model Penal Code) places himself or herself in a situation where it is probable that he or she would be subjected to duress, the defense of duress is unavailable. In so holding we are particularly mindful of the Model Penal Code drafters' reasoning that

> though this provision may have the effect of sanctioning conviction of a crime of purpose when the actor's culpability was limited to recklessness, we think the substitution is permissible in view of the exceptional nature of the defense. The provision will have its main room for operation in the case of persons who connect themselves with criminal activities, in which case too fine a line need not be drawn.

ALI, Model Penal Code § 2.09 (Tentative Draft No. 10, 1960).

■ Because Williams's prior conduct contributed mightily to the predicament in which he later found himself, the trial

court did not err in concluding that the defense of duress was inapplicable to the instant case. Here, the evidence reveals that Williams voluntarily became involved with the Eubanks' drug organization. It is unrefuted that Williams borrowed money from Rodney Eubanks. Because of his inability to repay promptly, Williams allegedly was forced to make the first drug run up to New York. He also participated in another drug run. In other words, the evidence does not suggest that he was forced to make these runs, he did this of his own volition to help pay off his debt. By becoming involved with this drug ring, Williams through his own recklessness made others aware of his connection with Eubanks, including his abductors. Williams was readily identifiable to those in the organization, including his abductors, and the abductors acted accordingly. This was a situation that would not have occurred but for Williams's association with the drug organization. Considering these facts and the applicable law, we conclude that Williams's assertion that the defense of duress applies is unavailing.[8]

### Attempted Robbery

Appellant next asserts that because the trial court's finding that "Reverend Hale was completely innocent" means that "[Hale's] apartment could not have been the stash house, and that [Williams] must have known this" and further that "[Williams] could not have entered the apartment with the intent to steal drugs and money from the apartment, because he knew they would not be there." We disagree and explain.

---

8. We further note that our decision is consistent with certain dicta in *Frasher v. State*, 8 Md.App. 439, 449–51, 260 A.2d 656 (1970) and *Darby v. State*, 3 Md.App. 407, 416–22, 239 A.2d 584 (1968). Neither of these cases, however, squarely addresses the issue presented in the case *sub judice*. In *Frasher*, we did note that the defense of duress was not available "if the compulsion arose by the defendant's own fault, negligence or misconduct." *Frasher*, 8 Md.App. at 449. Similarly, in *Darby*, we approved the trial court's use of instruction on the issue of duress that in pertinent part stated "[t]he defense cannot be claimed if the defendant by his own fault or misconduct created the emergency or necessity which confronted him." *Darby*, 3 Md.App. at 420–21, 239 A.2d 584 (quoting 1 *Wharton's Criminal Law and Procedure*, § 123.)

In *Osborne v. State*, 4 Md.App. 57, 60, 241 A.2d 171 (1967), Chief Judge Murphy (now Chief Judge of the Court of Appeals) explained that

[r]obbery is larceny from the person, accompanied by violence or putting in fear. *Harrison v. State*, 3 Md.App. 148 [152, 238 A.2d 153 (1968) ]. More specifically, to constitute robbery, the property must, as in larceny, be both taken and carried away, so that an asportation of the stolen property, as well as a trespass, would appear to be indispensable elements of the offense. To constitute an asportation, the robber, like the thief in larceny, must acquire complete control of the property at least for an instant, but the slightest asportation is sufficient to satisfy that element of the offense. *Clark and Marshall on Crimes* (6th Edition), § 12.12; *Perkins on Criminal Law*, p. 275.

*See also McCord v. State*, 15 Md.App. 63, 71, 289 A.2d 7 (1971) (asserting that a "hair's breadth" asportation is sufficient.) In *Bedford v. State*, 317 Md. 659, 667, 566 A.2d 111 (1989), the Court of Appeals explained that a criminal attempt is

governed by a 'substantial step' test, whereby a defendant will be found guilty of attempt only where the evidence demonstrates that he took 'substantial step[s] towards the commission of [a] crime whether or not his intention [to commit that crime] be accomplished ... [and] that no 'substantial step' will be found unless the conduct is 'strongly corroborative' of a criminal intention.

(quoting *Young v. State*, 303 Md. 298, 311, 493 A.2d 352 (1985)).

In *State v. Hawkins*, 326 Md. 270, 280–81, 604 A.2d 489 (1992), the Court of Appeals explained that "[a] *principal in the second degree* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive." (emphasis in the original) (quoting *State v. Ward*, 284 Md. 189, 197, 396 A.2d 1041 (1978), *appeal after remand*, 290 Md. 76, 427 A.2d 1008 (1981)). *See also Oates v. State*, 97 Md.App. 180, 184, 627 A.2d 555 (1993). In the instant case, uncontro-

verted evidence established that Williams directed the other men to Hale's apartment. Hale testified that Williams helped the men in ransacking his apartment. In fact, the appellant's fingerprints were found on two drawers. Even if appellant did not intend to steal, he knew that the others did. He aided, counseled and encouraged them in their attempt to steal from Reverend Hale. As a principal in the second degree, he was guilty as charged. Based upon this record, we cannot say that the trial court's decision was "clearly erroneous."

JUDGMENT AFFIRMED; DOCKET ENTRIES TO BE CORRECTED TO REFLECT APPELLANT'S CONVICTION OF ATTEMPTED ARMED ROBBERY. COSTS ASSESSED TO THE APPELLANT.